UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>URIAH CRAIN,<br><br>Defendant. | Case No. 2:17-cr-00325-RFB-VCF<br><br>**ORDER** |

Defendant Uriah Crain moves the Court to vacate, set aside, or correct his sentence (ECF Nos. 222, 247, 251). For the reasons below, his motions are denied.[1]

**I.   FACTUAL AND PROCEEDURAL BACKGROUND**

Mr. Crain was held in pre-trial detention at the Nevada Southern Detention Center ("NSDC"). See ECF No. 34. On November 28, 2017, finding credible allegations that Mr. Crain directed individuals to contact and influence witnesses and himself threatened to seriously harm or murder witnesses, the Court ordered NSDC to restrict Mr. Crain's communications. ECF No. 76. On December 5, 2017, Mr. Crain entered a change of plea ("first guilty plea"). ECF No. 88.

On January 2, 2018, Mr. Crain wrote a letter to the Court saying that he did not understand the terms of the plea agreement he signed, that he was not in the right state of mind when he entered into the agreement, and that his counsel was aware of this and collaborated with the government to secure his plea agreement. See ECF No. 95. Following this letter, Mr. Crain's counsel sought

---

[1] The Court had deferred ruling on the motions until certain related appellate cases had been resolved. These cases have now been completely resolved.

and received the Court's permission to withdraw. ECF No. 96, 97.

Replacement counsel was appointed, ECF No. 97, and Mr. Crain moved to withdraw his plea, ECF No. 105. Following several, detailed hearings, briefs, and modification orders of the original pretrial detention order (ECF No. 76), see, e.g., ECF Nos. 122, 117, 137, 141, 147, 151,152, 154, 158, 164, 165, 168, 169, 170, 171, Mr. Crain signed a new plea agreement ("second guilty plea"). ECF No. 181. The Court then denied the motion to withdraw the first guilty plea as moot. ECF No. 183.

During a September 4, 2018, hearing, the Court sentenced Mr. Crain. ECF No. 190. Judgement was entered on September 7, 2018. ECF No. 192. Mr. Crain was convicted of (count 1) aiding and abetting carjacking, (count 3) aiding and abetting a carjacking resulting in serious bodily injury, (count 4) discharging a firearm during and in relation to a crime of violence, and (count 5) being a felon in possession of a firearm. Id. The Court sentenced him to eighty-two months, running concurrently, as to Counts 1, 3, and 5. Id. A further 120 months were imposed, running consecutively, as to Count 4. Id. The total sentence imposed was 202 months. Id.

On September 6, 2019, Mr. Crain filed several motions, including an abridged Motion to Vacate under 28 U.S.C. § 2255 and a Motion to Stay briefing on the Motion to Vacate. ECF Nos. 222, 223. The Court granted both on September 10, 2019. ECF No. 226. On June 8, 2020, Mr. Crain filed a Supplement to his Motion to Vacate and an Amended Abridged Motion to Vacate. ECF Nos. 244, 247. Finally, on June 26, 2020, Mr. Crain filed a Second Amended Motion to Vacate. ECF No. 251. The Second Amended Motion to Vacate was fully briefed on August 26, 2020. ECF Nos. 263, 278. Prior to this order, the parties advised the Court of intervening, relevant authorities. ECF Nos. 295, 299, 300, 305, 306, 309, 311.

The Court's order follows.

## II.    LEGAL STANDARD

Under 28 U.S.C. § 2255, a petitioner may file a motion requesting the court which imposed sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Such a motion may be brought on the following grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the

sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." Id.; see United States v. Berry, 624 F.3d 1031, 1038 (9th Cir. 2010). When a petitioner seeks relief pursuant to a right newly recognized by a decision of the United States Supreme Court, a one-year statute of limitations applies. 28 U.S.C. § 2255(f)(3). That one-year limitation begins to run from "the date on which the right asserted was initially recognized by the Supreme Court." Id.

### III. DISCUSSION

Mr. Crain raises four grounds in his 2255 motion: that his guilty plea was induced by coercive conditions of confinement (ground 1), that carjacking is not a crime of violence (ground 2), that his guilty plea for felon in possession of a firearm did not include the requisite knowledge element (ground 3), and that his aiding and abetting convictions are not crimes of violence for the purposes of 18 U.S.C. § 924(c)(3)(A) (ground 4). The Court finds each unavailing and that there are no grounds to grant § 2255 relief. Each claim is addressed in turn.

#### A. Ground 1: Voluntariness

Mr. Crain first argues that his guilty plea was not knowing, voluntary, or intelligent because it was induced by coercive conditions of confinement. In support of that contention, Mr. Crain argues his second guilty plea was affected by the substantially the same conditions of confinement that he alleges led to his first guilty plea. While the Court modified the order to permit more or less contact with family members (including one who was incarcerated at the same facility) and defense counsel, throughout the process Mr. Crain was kept segregated from the general population. Mr. Crain argues further that this segregation and its attendant conditions rendered him mentally incapable of entering a valid guilty plea. Finally, Mr. Crain argues that his counsel at the time was ineffective as the same counsel allegedly handled both his first plea and his psychological evaluations while knowing that his guilty plea was ineffective.

The Court interprets Mr. Crain's first ground for relief as challenging the voluntariness of his guilty plea on the basis that either (1) the impact of his conditions of confinement or (2) the ineffectiveness of his counsel permitted an involuntary guilty plea. As a preliminary matter, the United States argues that Mr. Crain waived either argument by failing to raise it on direct appeal.

- 3 -

While an ineffective assistance of counsel claim may proceed regardless of whether it could have been brought on direct appeal, Massaro v. United States, 538 U.S. 500, 504 (2003), "the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review," Bousley v. United States, 523 U.S. 614, 621 (1998). The failure to raise voluntariness on direct appeal may be excused for cause. See United States v. Kaczynski, 239 F.3d 1108 (9th Cir. 2001). Mr. Crain's second basis raises the ineffective assitance of counsel and, therefore, the Court finds that basis is not defaulted. However, Mr. Crain failed to raise the impact of his conditions of confinement on direct appeal and does not argue he has cause for that failure, therefore the Court finds his first basis is procedurally defaulted. Nevertheless, even where the Court to find both arguments were not defaulted, for the reasons explained below the Court finds that Mr. Crain's plea was not involuntary.

A guilty plea operates as a waiver of important rights, and is valid only if done voluntarily, knowingly, and intelligently, "with sufficient awareness of the relevant circumstances and likely consequences." Bradshaw v. Stumpf, 545 U.S. 175, 183 (2005) (citing Brady v. United States, 397 U.S. 742, 748 (1970)). The voluntariness of a guilty plea is determined based on an examination of "all of the relevant circumstances surrounding it." Brady, 397 U.S. at 749. The Ninth Circuit has explained that because "it is difficult to probe the highly subjective state of mind of a criminal defendant, the best evidence of his understanding when pleading guilty is found in the record of the Rule 11 colloquy." United States v. Jimenez-Dominguez, 296 F.3d 863, 869 (9th Cir. 2002); see also Jeronimo, 398 F.3d at 1153-55 (finding a waiver of a direct appeal knowing and voluntary based on the plea agreement and the change of plea proceeding).

Ineffective Assistance of Counsel claims are governed by the two-part test announced in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court held that a petitioner claiming ineffective assistance of counsel has the burden of demonstrating that (1) the attorney made errors so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth Amendment, and (2) that the deficient performance prejudiced the defense. Williams, 529 U.S. at 390-91 (citing Strickland, 466 U.S. at 687). To establish ineffectiveness, the defendant must show that counsel's representation fell below an objective standard of reasonableness. Id. To

establish prejudice, the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. A reasonable probability is "probability sufficient to undermine confidence in the outcome." Id. Additionally, any review of the attorney's performance must be "highly deferential" and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the distorting effects of hindsight. Strickland, 466 U.S. at 689. It is the petitioner's burden to overcome the presumption that counsel's actions might be considered sound trial strategy. Id.

Ineffective assistance of counsel under Strickland requires a showing of deficient performance of counsel resulting in prejudice, "with performance being measured against an objective standard of reasonableness, . . . under prevailing professional norms." Rompilla v. Beard, 545 U.S. 374, 380 (2005) (internal quotations and citations omitted). When the ineffective assistance of counsel claim is based on a challenge to a guilty plea, the Strickland prejudice prong requires a petitioner to demonstrate "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985).

There is a detailed record on this issue in the case; the Court reviews the most relevant portions here. In sealed proceedings, the Court was informed at great length regarding Mr. Crain's mental and emotional state. Subsequently, the Court and counsel took great care to accommodate during the hearing where Mr. Crain pleaded guilty.

The Court questioned Mr. Crain's counsel—Ms. Rasmussen—that appropriate steps had been taken to ensure Mr. Crain understood the terms of the plea and was making a knowing, voluntary, and intelligent choice.

> MS. RASMUSSEN: [Mr. Crain and I have] been talking about [the revised plea offer] for quite some time. And he has decided that he would agree to the new plea.
>
> [. . . .]
>
> THE COURT: Now, since you have received this written plea agreement from the Government, have you discussed it with Mr. Crain?
>
> MS. RASMUSSEN: Yes, Your Honor. I've discussed this . . . new plea agreement on numerous occasions with Mr. Crain, at numerous visits in person – –

THE COURT: So I wouldn't normally ask you, but given this case I'm going to ask you if you could give me a range of how many times you've discussed it with him approximately.

MS. RASMUSSEN: I would say five to six.

THE COURT: Okay. And how many times have you reviewed this specific document with him? Was it five to six times as well?

MS. RASMUSSEN: I think that I've specifically reviewed the document with him at least three of those times. . . . And the other times have been the mechanics, if you will, of the plea agreement.

THE COURT: Okay. And based upon what you understood about Mr. Crain and his ability to understand and the different levels of understanding that he has, are you satisfied that he fully understands all of the terms of the plea agreement?

MS. RASMUSSEN: I am satisfied that he fully understands all of the terms. We went through it again here today page by page, line by line. He requested some revisions that I discussed with [the government]. Those were made. So I believe that he fully understands all of the terms of this plea agreement.

[. . . .]

THE COURT: . . . . Are you also confident that Mr. Crain is pleading because he believes that this is the appropriate way to resolve the case rather than simply to remove himself from the restrictive conditions of confinement?

MS. RASMUSSEN: I am satisfied, Your Honor, for a variety of reasons. I have explained to Mr. Crain the consequences should the Court grant his motion to withdraw the prior plea . . . most importantly what could happen [at trial], severe consequences of what could happen there. I have explained to him that the Court could deny his motion to withdraw the plea. In which case he wouldn't have the benefit of this plea which is more favorable to him the consequences of this plea, and we have had multiple conversations within the time frame that I've been talking about all of those scenarios.

THE COURT: . . . . Are you aware of [Mr. Crain's expert] Dr. Kang's assessment of your client, right?

MS. RASMUSSEN: Yes.

THE COURT: And her recommendation for the best way to present information to him in a way that he can understand it and process it to make a decision, you're aware of what she recommended?

MS. RASMUSSEN: Yes, that she recommended that we do repetitive conversation, that we talk about single concepts, not multilayer all at once, and that we write

things out, allow him to write things out.

THE COURT: And did you use those procedures with Mr. Crain when you were reviewing this particular plea agreement?

MS. RASMUSSEN: Yes.

THE COURT: . . . . So are you satisfied, Ms. Rasmussen, that Mr. Crain is competent to enter into this binding plea agreement[?]

MS. RASMUSSEN: Yes.

In addition, counsel for the United States—Mr. Smith—told the Court that he personally spoke with Mr. Crain for "about an hour" and, during that time, outlined in plain language the evidence he would present at trial, witnesses he would call at trial, and the law that applied to the situation. Mr. Smith explained that he "did that not in any effort to try to threaten or coerce him into pleading guilty, but, rather, so that Mr. Crain would be able to make an informed decision." Finally, Mr. Smith said that he believed "as an officer of the court that Mr. Crain was able to understand my conversation."

The Court, based on its observations of Mr. Crain, the previous testimony of Dr. Kang, the representations of counsel, and prior responses to questions, found Mr. Crain competent to enter this particular plea. Next, the Court itself painstakingly reviewed the terms, repeated and rephrased questions, circumstances, and consequences of the second guilty plea. The Court often stopped to give Mr. Crain opportunities to ask questions. Frequently, the Court had Mr. Crain restate his understanding of the situation or the question being asked.

THE COURT: Can you tell me in your own words why are we here today[?]

THE DEFENDANT: Was initially here to withdraw from plea, but there have been a change of feelings and I'm here to accept a new plea.

[. . . .]

THE COURT: . . . . The first right that you'd be giving up by pleading guilty is the right to go to jury – – to trial by jury on all of the charges. Do you understand you're giving up that right?

THE DEFENDANT: Yes, sir.

1  THE COURT: And do you know what it means to go to a trial by jury?

2  THE DEFENDANT: Yes, sir.

3  [. . . .]

4  THE COURT: [W]ho gets to decide at a jury trial whether or not you're guilty or
5  not?

6  THE DEFENDANT: The jury.

7  [. . . .]

8  THE COURT: Okay. You understand that this is a binding plea agreement? Do you
9  know what that means?

10  THE DEFENDANT: Yes.

11  THE COURT: Can you tell me in your own words what that means to you?

12  THE DEFENDANT: Meaning the Court can't do anything that's outside of this
13  plea.

14  […]

15  THE COURT: Can you tell me in your own words what you understand
16  [concurrent] to mean?

17  THE DEFENDANT: Running together.

At the conclusion of the Court's questions, had another opportunity to ask questions. During that time, he asked an informed question regarding the calculation of the maximum number of months. The hearing began at 1:13 and ended at 4:02 pm. This time includes an hour delay, prior to the Court's detailed questioning, at defense counsel's request, to accommodate further discussions between Mr. Crain and his counsel regarding the terms of the plea deal and Mr. Crain's intention to plead guilty. Throughout the hearing, the Court and counsel ensured that Mr. Crain was making a knowing, voluntary, and intelligent plea.

   Mr. Crain's argument centers on allegations that his guilty plea was tainted by the long period of restricted conditions of confinement that preceded its entry and that his counsel was ineffective because she was aware of this. However, in consideration of all relevant circumstances, and with special weight given to the Rule 11 colloquy, the Court finds that Mr. Crain's plea was

knowing, voluntary, and intelligent.

Further, the Court finds that Mr. Crain has failed to show counsel made errors so serious that it fell below the threshold of competence set by the Sixth Amendment. Defense Counsel represented to the Court that and detailed how she carefully followed the recommendations of Dr. Kang. Ms. Rasmussen did this herself during the hearing, where on multiple occasions the Court provided additional time for her to consult with Mr. Crain. Mr. Crain has presented no non-conclusory evidence to the contrary.

The Court further finds that Mr. Crain has failed to show prejudice. To prevail, Mr. Crain must show that "there is a reasonable probability that, but for counsel's [alleged] errors, he would not have pleaded guilty and would have insisted on going to trial." Lockhart, 474 U.S. at 56-57, 59; Lambert v. Blodgett, 393 F.3d 943, 980-981 (9th Cir. 2004). As detailed above, the Court itself carried out multiple hearings, received briefing, provided ample additional time, implemented safeguards, and carefully questioned Mr. Crain to ensure that he was making a knowing, voluntary, and intelligent plea. However, Mr. Crain argues that each of these protective measures was undermined by the same shortcoming: failing to break down information into simple concepts and have Mr. Crain explain back his understanding. Nevertheless, the Court finds that Mr. Crain did make a proper plea and would not have proceeded to trial but for the alleged shortcomings of his counsel. Mr. Crain clearly and repeatedly assured the Court that he understood what was happening, often explaining that back to the Court in his own words. See United States v. Ross, 511 F.3d 1233, 1236-37 (9th Cir. 2008) ("Statements made by a defendant during a guilty plea hearing carry a strong presumption of veracity in subsequent proceedings attacking the plea."). The Court delayed the hearing so that Mr. Crain could again be explained the terms of the plea deal using the methods recommended by Dr. Kang. The Court performed its own tailored questioning and, informed by prior hearings on Mr. Crain's idiosyncratic needs, found Mr. Crain's plea credibly voluntary, knowing, and intelligent.

Therefore, Mr. Crain's first ground for relief fails.

**B.  Ground 2: Federal Carjacking as Predicate Crimes of Violence**

Mr. Crain second argues that his conviction for federal carjacking is not a crime of

1  violence. Section 924(c), under which Mr. Crain was convicted, prohibits the use of a firearm "during and in relations to any crime of violence." 18 U.S.C. § 924(c)(1)(A). Following the Supreme Court's ruling in Davis, a felony qualifies as a crime of violence only if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A); see also Davis, 139 S. Ct. 2319 (invalidating 18 U.S.C. § 924(c)(3)(B)).

The Ninth Circuit has already held that federal carjacking *categorically* is a crime of violence under § 924(c)(1)(A). United States v. Gutierrez, 876 F.3d 1254, 1257 (9th Cir. 2017) (per curiam); see also United States v. Eckford, 77 F.4th 1228 (9th Cir. 2023) (applying the reasoning in Gutierrez post-Davis to hold Hobbs Act robbery is a crime of violence under § 924(c)(1)(A)); United States v. Buck, 23 F.4th 919 (9th Cir. 2022) (similar); United States v. Burke, 943 F.3d 1236 (9th Cir. 2019) (similar). Therefore, the Court finds that Mr. Crain's second ground for relief is foreclosed by binding case law.[2]

### C. Ground 3: Requisite Knowledge

Mr. Crain next argues that his plea for being a felon in possession of a firearm lacked the requisite knowledge of his status as a felon. Under 18 U.S.C. § 922(g) it is unlawful for certain individuals to possess firearms and 18 U.S.C. § 924(a)(2) provides for the prosecution of anyone who "knowingly violates" that provision. In Rehaif v. United States, that Supreme Court clarified that "to convict a defendant, the Government . . . must show that the defendant knew he possessed a firearm and also that he knew he had the relevant status when he possessed it." 139 S. Ct. 2191, 2194 (2019); see also United States v. Luong, 965 F.3d 973 (9th Cir. 2020) (applying the "knowledge-of-status" element).

Crain acknowledges that Rehaif and subsequent cases only require the prosecution to prove that a defendant knew he fell into the relevant prohibited category. However, Crain argues that the Court should find, given Mr. Crain's intellectual disabilities, he likely did not understand he was

---

[2] Mr. Crain did not raise this issue before the Court or in his direct appeal. Thus, it is procedurally defaulted. Massaro v. United States, 538 U.S. 500, 504 (2003). Such a default may be waived where there is a showing of either actual innocence or both cause and prejudice. Since federal carjacking is categorically a crime of violence, there can be neither a valid claim of innocence nor prejudice. Thus, ground 2 is also procedurally defaulted.

prohibited from possessing a weapon and likely would have sought to modify his plea agreement if he had known the prosecution must prove that knowledge.

Mr. Crain misstates the relevant law. Under Rehaif all that must be proved to satisfy the *mens rea* of § 924(a)(2) is that (1) Mr. Crain knew he was previously convicted of a felony and (2) that he knew he had possession of a firearm. 139 S. Ct. at 2194. *Simpliciter.* For the first, the Court finds that Mr. Crain pleaded ample facts, including that he possessed and used a firearm, to establish he was knowingly in possession of a firearm. For the second, the Court finds that Mr. Crain admitted to being convicted of a crime punishable by a term of imprisonment exceeding one year at the time of possessing the firearm. There is no additional element that Mr. Crain must have understood that his prior felony conviction made possessing a firearm illegal.

Therefore, the Court finds that Mr. Crain's third ground for relief fails.[3]

**D. Ground 4: Aiding and Abetting for § 924(c)(3)(A)**

Finally, Mr. Crain argues that even if federal carjacking is a crime of violence, aiding and abetting does not qualify as a crime of violence. The federal aiding and abetting statute provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." 18 U.S.C. § 2(a). Ms. Crain argues that criminal liability under 18 U.S.C. § 2(a) does not require the use or threat of use of force that the Gutierez court relied upon to find federal carjacking a crime of violence. The Ninth Circuit has rejected this argument. "One who aids and abets the commission of a violent offense has been convicted of the same elements as one who was convicted as a principal." Eckford, 77 F.4th at 1237; Young, 22 F.4th at 1123 (same).

Since aiding and abetting liability imports the elements of the underlying crime, the Court finds that ground 4 also fails to offer a basis for relief.[4]

---

[3] Mr. Crain similarly did not raise this issue before the Court or in direct appeal. For ground 3, he only attempts to show the cause-and-prejudice exception. However, since Rehaif confirms the plea was proper and Mr. Crain does not identify an alternative basis for prejudice, ground 3 is also procedurally barred. See Bousley v. United States, 523 U.S. 614, 622 (1998).

[4] Again, Mr. Crain failed to raise this argument previously before the Court or in his direct appeal. Therefore, for the reasons outlined in note 1 *supra*, ground 4 is also procedurally defaulted.

### IV. CERTIFICATE OF APPEALABILITY

This is a final order adverse to the Petitioner Mr. Crain. As such, Rule 11(a) of the Rules Governing Section 2255 Cases requires this Court to issue or deny a certificate of appealability (COA). See also 28 U.S.C. § 2253(c)(1)(B). Without a COA, Mr. Crain "may not appeal that denial." United States v. Washington, 653 F.3d 1057, 1059 (9th Cir. 2011). To issue a COA, the Court must find that Mr. Crain "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Under this standard, the Court looks for a showing that "reasonable jurists would find [this Court's] assessment of the constitutional claims debatable or wrong." Slack v. McDaniel, 529 U.S. 473, 484 (2000). Because the Court found that clear facts and settled, binding caselaw disposes of Mr. Crain's claims, the Court finds that no reasonable jurist could find the Court's assessment debatable or wrong.

### V. CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant Uriah Crain's Abridged Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. 2255 (ECF No. 222), Amended Abridged Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. 2255 (ECF No. 247), and Second Amended Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. 2255 (ECF No. 251) are **DENIED**.

**IT IS FURTHER ORDERED** that Defendant Uriah Crain is **DENIED** a Certificate of Appealability.

**IT IS FURTHER ORDERED** that Defendant Nicole Elizabeth Nowak's Motion for Joinder as to Defendant Uriah Crain's Response to the United States' for Leave to Advise the Cout of Relevant New Authority (ECF No. 300) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant Uriah Crain's Unopposed Motion to Allow 30 Days for Supplemental Briefing (ECF No. 307) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the United States' Motion for Leave to Advise the Court of new, Relevant, Binding Authority (ECF No. 309) is **GRANTED**.

**IT IS FURTHER ORDERED** that Defendant Uriah Crain's Motion for Clarification (ECF No. 311) is **DENIED** as moot.

**IT IS FURTHER ORDERED** that the Clerk of Court will **ENTER** separate and final judgement for Defendant Uriah Crain and will **SEND** Ms. Crain a copy of this order.

**DATED** this 30th day of April 2024.

                                           **RICHARD F. BOULWARE, II**
                                           **UNITED STATES DISTRICT JUDGE**